No. 20-50667

# In the United States Court of Appeals for the Fifth Circuit

TEXAS DEMOCRATIC PARTY; DEMOCRATIC SENATORIAL
CAMPAIGN COMMITTEE; DEMOCRATIC CONGRESSIONAL
CAMPAIGN COMMITTEE,

*Plaintiffs-Appellees,*

*v.*

RUTH R. HUGHS,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## BRIEF FOR DEFENDANT-APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant
 Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

KYLE D. HAWKINS
Solicitor General

MATTHEW H. FREDERICK
Deputy Solicitor General
Matthew.Frederick@oag.texas.gov

PATRICK K. SWEETEN
Associate Deputy Attorney General

TODD LAWRENCE DISHER
Deputy Chief, Special Litigation Unit

WILLIAM T. THOMPSON
Special Counsel

Counsel for Defendant-Appellant

# Certificate of Interested Persons

No. 20-50667

Texas Democratic Party; Democratic Senatorial Campaign Committee; Democratic Congressional Campaign Committee,

*Plaintiffs-Appellees,*

*v.*

Ruth R. Hughs,

*Defendant-Appellant.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, appellant, as a governmental party, need not furnish a certificate of interested persons.

/s/ Matthew H. Frederick

Matthew H. Frederick
*Counsel of Record for*
*Defendant-Appellant*

## Statement Regarding Oral Argument

This case merits oral argument. A Fifth Circuit panel has already acknowledged that the appeal "presents an important question that has not been resolved by our court: whether and to what extent *Ex parte Young's* exception to sovereign immunity permits plaintiffs to sue the Secretary in an as-applied challenge to a law enforced by local officials." *Tex. Democratic Party v. Hughs*, 974 F.3d 570, 570 (5th Cir. 2020) (per curiam). The resolution of this question will determine whether a district court may commandeer the office of a high-ranking state official to rewrite the State's election laws—as the district court is poised to do below. Defendant requests oral argument because it is likely to aid the Court's resolution of this serious issue.

# Table of Contents

Page

Certificate of Interested Persons ...................................................................... i

Statement Regarding Oral Argument ............................................................. ii

Table of Authorities ....................................................................................... v

Introduction ................................................................................................... 1

Statement of Jurisdiction ............................................................................... 2

Issues Presented .............................................................................................. 3

Statement of the Case ..................................................................................... 3

    I.    Voter Registration in Texas ................................................................ 3

    II.   The Secretary's 2018 Guidance ......................................................... 4

    III. District Court Proceedings .................................................................. 6

Summary of the Argument .............................................................................. 9

Standard of Review ....................................................................................... 10

Argument ...................................................................................................... 11

    I.    The Secretary is not a Proper *Ex parte Young* Defendant Because
        She Lacks a Sufficient Connection to the Enforcement of the
        Voter-Registration Laws. ................................................................. 11

        A.   The Secretary does not have the requisite connection to
            enforcement of the challenged statute. ........................................... 12

            1.   The Secretary is not tasked with enforcement of section
                13.002. ............................................................................... 12

            2.   Neither the Secretary's title nor her general powers to
                oversee the election process create the requisite connection
                to enforcement. ................................................................. 14

        B.   The Secretary has neither instituted nor enforced a "wet
            signature rule." ............................................................................. 17

            1.   The Secretary has not instituted a "wet signature rule." ........... 18

            2.   The Secretary has not enforced the supposed "wet
                signature rule." ................................................................. 20

            3.   Plaintiffs fail to allege any threat of enforcement by the
                Secretary. .......................................................................... 21

II.  Sovereign Immunity and Federalism Principles Bar all the Relief
Plaintiffs Seek. ....................................................................... 27

    A.  The declaratory relief sought here is retrospective and
therefore unavailable under the *Ex parte Young* exception. ................ 28

    B.  Any injunctive relief issued in this case would require the
Secretary to perform a discretionary function of her office,
which *Ex parte Young* prohibits. ......................................... 29

        1.  Prohibitory relief against the Secretary would serve no
purpose. .................................................................. 30

        2.  *Ex parte Young* does not permit an injunction that requires
the Secretary to take affirmative action in her official
capacity. ................................................................. 31

        3.  Assuming that *Ex parte Young* permits some affirmative
injunctive relief, it does not allow federal courts to control
the exercise of a state official's discretion. ................................ 33

Conclusion ..................................................................... 37

Certificate of Service .......................................................... 38

Certificate of Compliance ...................................................... 38

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*In re Abbott*,
956 F.3d 696 (5th Cir. 2020) ...................................................*passim*

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................18, 19, 20

*Ballas v. Symm*,
351 F. Supp. 876 (S.D. Tex. 1972), *aff'd*, 494 F.2d 1167 (5th Cir.
1974) .................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................19, 20

*Bullock v. Calvert*,
480 S.W.2d 367 (Tex. 1972) (Reavley, J.)............................15, 17, 27

*Bush v. Gore*,
531 U.S. 98 (2000).................................................................... 6

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ...................................................*passim*

*Danos v. Jones*,
652 F.3d 577 (5th Cir. 2011) ...................................................... 33

*St. Tammany Par. ex rel. Davis v. FEMA*,
556 F.3d 307 (5th Cir. 2009)....................................................... 35

*Davis v. Scherer*,
468 U.S. 183 (1984) ................................................................. 35

*Freedom from Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020)....................................... 28, 29, 32, 37

*Frew ex rel. Frew v. Hawkins*,
540 U.S. 431 (2004).................................................................. 27

*Gahagan v. USCIS*,
911 F.3d 298 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 449 (2019) ..................... 34

*Green Valley Special Util. Dist. v. City of Schertz*,
969 F.3d 460 (5th Cir. 2020) (en banc) ....................................*passim*

*Hawaii v. Gordon*,
373 U.S. 57 (1963) (per curiam) ................................................. 32

*In re Hotze*,
    No. 20-0739, --- S.W.3d ----, 2020 WL 5919726 (Tex. Oct. 7,
    2020) ...................................................................................... 14, 17

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949) .................................................................. 30, 33

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ......................................................................... 7

*Lightbourn v. Cnty of El Paso*,
    118 F.3d 421 (5th Cir. 1997) ..................................................... 34, 35

*Mi Familia Vota v. Abbott*,
    --- F.3d ----, 2020 WL 6058290 (5th Cir. Oct. 14, 2020) ......................... *passim*

*Mi Familia Vota v. Abbott*,
    2020 WL 5759845 (5th Cir. Sept. 18, 2020) ............................... 16, 27

*OCA-Greater Houston v. Texas*,
    867 F.3d 604 (5th Cir. 2017) ..................................................... 26–27

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ........................................................................... 2

*Printz v. United States*,
    521 U.S. 898 (1997) ......................................................................... 36

*Quern v. Jordan*,
    440 U.S. 332 (1979) .................................................................. 9, 10, 28

*Richardson v. Tex. Sec'y of State*,
    No. 20-50774, 2020 WL 6127721 (5th Cir. Oct. 19, 2020) ...................... *passim*

*Rountree v. Dyson*,
    892 F.3d 681 (5th Cir. 2018) ............................................................. 9

*In re Stalder*,
    540 S.W.3d 215 (Tex. App.—Hous. [1st Dist.] 2018, no pet.) ...................... 18

*Stringer v. Pablos*,
    320 F. Supp. 3d 862 (W.D. Tex. 2018), *rev'd sub. nom. Stringer v.
    Whitley*, 942 F.3d 715 (5th Cir. 2019) ...................................... 8, 23, 25

*Stringer v. Pablos*,
    No. SA-20-CV-46-OG, 2020 WL 532937 (W.D. Tex. Jan. 30,
    2020) .............................................................................................. 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ......................................................................... 18

*Tex. Democratic Party v. Abbott*,
   --- F.3d ----, 2020 WL 6127049 (5th Cir. Oct. 14, 2020) ..........................*passim*
*Texas Democratic Party v. Abbott*,
   No. 20-50407 (5th Cir. Sept. 10, 2020) ........................................................... 27
*Tex. Democratic Party v. Hughs*,
   974 F.3d 570 (5th Cir. 2020) (per curiam)................................................. ii, 27
*Va. Office for Prot. & Advocacy v. Stewart*,
   563 U.S. 247 (2011) ....................................................... 27–28, 29, 33
*Vann v. Kempthorne*,
   534 F.3d 741 (D.C. Cir. 2008) ........................................................... 34
*Ex parte Young*,
   209 U.S. 123 (1908) ...............................................................*passim*
*Ysleta Del Sur Pueblo v. Laney*,
   199 F.3d 281 (5th Cir. 2000).......................................................... 2
*Zapata v. Smith*,
   437 F.2d 1024 (5th Cir. 1971).......................................................... 30

## Constitutional Provision and Statutes:

U.S. Const. amend. XIV ...................................................................... 6

28 U.S.C.:
   § 1291 .......................................................................................... 2
   § 1331 .......................................................................................... 2
   § 1343 .......................................................................................... 2

42 U.S.C.
   § 1971.......................................................................................... 6
   § 1983 ....................................................................................... 7, 9

52 U.S.C.
   § 10101(a)(2)(B) .......................................................................... 6
   § 20509........................................................................................ 24

Tex. Elec. Code:
   § 12.001 ...................................................................................... 3
   § 12.031 ...................................................................................... 3
   § 13.002 ...............................................................................*passim*
   § 13.002(a) ............................................................................. 3, 13
   § 13.002(b) ............................................................................. 4, 25

§ 13.071 ................................................................................... 3, 17, 30, 32

§ 13.071(a) ...................................................................................13

§ 13.072 ................................................................................... *passim*

§ 13.072(a)(1) ............................................................................... 3

§ 13.072(c) ...............................................................................3, 13

§ 13.073 ................................................................................... 32

§ 13.073(b) ...................................................................................13

§ 13.074(a) ............................................................................... 3

§ 13.075 ................................................................................... 3

§ 13.079 ...............................................................................3, 14

§ 13.101 ................................................................................... 4

§ 13.142 ................................................................................... 3

§ 13.144 ...............................................................................3, 14

§ 14.001 ...............................................................................4, 14

§ 15.022 ...............................................................................4, 14

§ 15.024 ................................................................................... 14

§ 15.051 ................................................................................... 4

§ 15.144 ................................................................................... 4

§ 16.031 ...............................................................................4, 14

§ 16.033 ...............................................................................4, 14

§ 16.037 ................................................................................... 4

§ 16.061 ................................................................................... 4

§ 16.064 ................................................................................... 4

§ 16.066 ...............................................................................4, 14

§ 16.095 ...............................................................................4, 14

§ 17.001 ................................................................................... 14

§ 20.063(a) ................................................................................... 23

§ 31.001(a) ................................................................................... 14

§ 31.003 ................................................................................... *passim*

§ 31.004 ...............................................................................34, 35

§ 31.005 ...............................................................................15, 16, 17, 35

§ 31.016 ...................................................................................15

**Other Authorities:**

James Barragán, *Thousands Of Texas Voter Registration Applications Filed Using Online Tool Could Be Invalid*, Dallas Morning News, Oct. 4, 2018, https://www.dallasnews.com/news/politics/2018/10/04/thousands-of-texas-voter-registration-applications-filed-using-online-tool-could-be-invalid/ .............................................................*passim*

Civil Rights Act of 1964, Pub. L. No. 88-352, 78 Stat. 241 .................................... 6

National Voter Registration Act of 1993, Pub. L. No. 103-31, 107 Stat. 77 ......................................................................................................... 24

Texas Secretary of State Press Release, *Secretary Pablos Reminds Texans To Exercise Caution When Registering To Vote*, Oct. 4, 2018, https://www.sos.texas.gov/about/newsreleases/2018/100418.shtml. ....................................................................................................5, 18, 22

# Introduction

Texas voter-registration laws reflect the Legislature's careful balancing of convenience and security. Texas permits the submission of voter-registration applications by personal delivery, mail, and fax. However it is submitted, the completed form must be in writing and signed by the applicant. This ensures that election officials have a copy of the voter's signature should they ever need to confirm the voter's identity through signature-verification.

Unsatisfied with this balance, Plaintiffs would prefer that Texas use an electronic registration system that accepts digital signatures. When an organization attempted to roll out that system without the State's authorization, county registrars—under their statutory obligation to ensure applications are correctly completed—rejected many of those applications.

So Plaintiffs sued the Texas Secretary of State, alleging violations of federal law and the Constitution. As a remedy, Plaintiffs asked the district court to order the Secretary to compel the registrars to adopt Plaintiffs' vision for voter registration. But the Secretary does not, cannot, and will not enforce the signed-writing requirement. As a result, *Ex parte Young*, 209 U.S. 123 (1908), does not allow Plaintiffs to challenge the signed-writing requirement through a suit against the Secretary. And in no event could Plaintiffs invoke *Ex parte Young*'s narrow exception to sovereign immunity to control how the Secretary performs her public duties. Accordingly, the Secretary moved to dismiss the complaint based on sovereign immunity, among other grounds.

Nevertheless, the district court refused to dismiss the suit, holding that the Secretary was sufficiently connected to the challenged law. The court justified its holding with legal theories the Fifth Circuit has already rejected and a host of irrelevant observations. The court said nothing about the propriety of the remarkably intrusive relief Plaintiffs seek.

The district court's opinion, if allowed to stand, would permit these and future plaintiffs to change Texas election laws simply by naming the Secretary as a placeholder defendant. A motion for injunctive relief already sits pending in the court below, stayed only by operation of the mandate rule. This Court should reverse the district court's sovereign-immunity ruling and direct it to dismiss Plaintiffs' claims for lack of jurisdiction.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's subject-matter jurisdiction under 28 U.S.C. §§ 1331 & 1343. ROA.12. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291. On July 22, 2020, the district court denied the Secretary's motion to dismiss on sovereign-immunity grounds. ROA.206, ROA.218. The Secretary filed a notice of appeal from that denial on August 14, 2020. ROA.902. Under the collateral-order doctrine, an order denying sovereign immunity to a state official is immediately appealable. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993); *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 284–85 (5th Cir. 2000).

## Issues Presented

1. Whether the Texas Secretary of State is the proper defendant in a lawsuit challenging the enforcement of a statute that the Secretary does not enforce.

2. Whether sovereign immunity and federalism permit a federal court to co-opt a state official's rulemaking and enforcement powers.

## Statement of the Case

### I. Voter Registration in Texas

Voter registration in Texas is handled at the county level. To register to vote, an individual must complete an application form and send it to her local county registrar. Tex. Elec. Code § 13.002(a). The registrar, who is typically the county tax assessor-collector or county clerk, is responsible for every step of the application and registration process. *Id.* §§ 12.001, 12.031. For example, it is the registrar's responsibility to review the application. *Id.* § 13.071. If the application is correctly filled out "and indicates that the applicant is eligible for registration," the registrar will ordinarily approve the application and issue a registration certificate. *Id.* §§ 13.072(a)(1), 13.142, 13.144. If the application is incorrectly filled out or does not show an entitlement to vote, the registrar must reject the application. *Id.* § 13.072(c). And if the application is facially valid but "the registrar has reason to believe the applicant is not eligible for registration or the application was submitted in an unauthorized manner, the registrar shall challenge the applicant." *Id.* § 13.074(a). The challenge process, which affords the applicant notice and a hearing, is overseen and determined by the registrar. *Id.* §§ 13.075–13.079.

It is also the registrar's responsibility to maintain a record of approved registration applications and certificates, ensure that the records are correct and up-to-date, and issue renewal certificates. *Id.* §§ 13.101, 14.001, 15.022, 15.051, 15.144. Finally, Texas law empowers the registrar to cancel or reinstate a voter's registration. *Id.* §§ 16.031–16.033, 16.037. Again, it is the registrar that hears and determines any challenge to cancellation. *Id.* §§ 16.061, 16.064, 16.066, 16.095. In short, Texas voter registration is the registrar's domain.

## II. The Secretary's 2018 Guidance

A voter registration application is only valid if it is "in writing and signed by the applicant." *Id.* § 13.002(b). Before the 2018 midterms, a third-party smartphone application ("app") purported to offer electronic voter-registration services to Texas voters. ROA.88 ¶ 17.[1] This third-party service had the applicant "sign their name on a piece of paper" (rather than on the application) and upload an image of that signature. ROA.88 ¶17. The app then "auto-populate[d]" the application form, and the third-party organizers behind the app printed the form, "affixed the voter['s] signature[] to the application form," and sent it to the registrar. ROA.88 ¶ 17.

The Texas Secretary of State (then Rolando Pablos) took the view that use of digital signatures for registration applications was not permitted by the Election

---

[1] Because this case reaches the Court at the motion-to-dismiss stage, the facts are drawn from Plaintiffs' operative complaint and documents Plaintiffs incorporated into the complaint.

Code and "create[d] a high risk for fraud and abuse."[2] To ensure that voters "underst[ood] [the] proper and legal procedures for registering to vote," the Secretary issued a press release "remind[ing] all eligible Texas voters that online voter registration is not available in the State of Texas," and directing them to official voter-registration resources.[3]

The Secretary also "advis[ed] counties that received the [third-party] applications to notify residents that they [were] incomplete." Barragán, *supra*. In their complaint, Plaintiffs refer to this advice from the Secretary as the "wet signature rule," ROA.80–81, although Plaintiffs do not allege that the Secretary engaged in formal rulemaking or that the Secretary told the registrars that they were legally obligated to follow his advice.

In fact, not all voter registrars agreed with the Secretary's interpretation of the Code at first. "For instance, the day after the Secretary announced the wet signature rule, . . . the Travis County registrar[] said that he would process and accept registration applications without wet signatures despite the Secretary's announcement," although he ended up changing his mind. ROA.89 ¶ 19. "Other counties followed

---

[2] James Barragán, *Thousands of Texas Voter Registration Applications Filed Using Online Tool Could Be Invalid*, Dallas Morning News, Oct. 4, 2018, https://www.dallasnews.com/news/politics/2018/10/04/thousands-of-texas-voter-registration-applications-filed-using-online-tool-could-be-invalid/. Plaintiffs incorporated this article into their complaint by reference. ROA.89 ¶ 18.

[3] Texas Secretary of State Press Release, *Secretary Pablos Reminds Texans To Exercise Caution When Registering To Vote*, Oct. 4, 2018, https://www.sos.texas.gov/about/newsreleases/2018/100418.shtml. Incorporated by reference into Plaintiffs' complaint. ROA.89 ¶ 18.

the Secretary's guidance." ROA.89 ¶ 20. Local officials sent notices to individuals whose applications were rejected as incomplete, giving them the opportunity to re-submit the form with a written signature. Barragán, *supra*.

## III. District Court Proceedings

In early 2020, various groups affiliated with the Democratic Party filed a com-plaint against Ruth Hughs, the current Secretary of State, in her official capacity. ROA.10.[4] In Plaintiffs' view, the Secretary's understanding of the signed-writing re-quirement is incorrect. ROA.90–92. They also allege that registrars will "arbitrar-ily" apply the Secretary's advice and "den[y]" voters "the opportunity to register." ROA.89 ¶ 20; ROA.92 ¶ 25.

Accordingly, Plaintiffs claim that the registrars' agreement with the Secretary's interpretation and their resulting enforcement of voter-registration laws runs afoul of (1) a provision within section 101 of the Civil Rights Act of 1964, 52 U.S.C. § 10101(a)(2)(B), which prohibits election officials from "deny[ing] the right . . . to vote" based on immaterial "error[s] or omission[s]" in applications, ROA.92;[5] (2) the Equal Protection Clause's prohibition against the "arbitrary and disparate treat-ment" of those "granted the right to vote," ROA.94 (quoting *Bush v. Gore*, 531 U.S.

---

[4] By the time the district court ruled on the motion to dismiss, the operative complaint was the first amended complaint, ROA.80–98; *see* ROA.204.

[5] Section 101 was initially codified at 42 U.S.C. § 1971, *see* Pub. L. No. 88-352, 78 Stat. 241, 241 (1964), which is why Plaintiffs and the district court describe the first claim as arising under "Section 1971 of the Civil Rights Act of 1964." ROA.92, 97; ROA.204, 213. The district court also referred to 52 U.S.C. sec-tion 10101(a)(2)(B) as "the Materiality Provision." ROA.213–14.

98, 104–05 (2000) (per curiam)); (3) the First and Fourteenth Amendments' prohibition against unduly burdening the right to vote, ROA.94; and (4) the Due Process Clause's "protection against the disenfranchisement of a state electorate in violation of state election law," ROA.96.

Plaintiffs relied on the Civil Rights Act itself to supply an implied private cause of action for the alleged statutory violation, ROA.92, and brought the alleged constitutional violations under 42 U.S.C. § 1983, ROA.93–94; ROA.96. As a remedy, Plaintiffs asked the district court to grant the following relief:

- Void the so-called "wet signature rule" by declaring it violative of the Civil Rights Act and the Constitution;

- Enjoin the Secretary and voter registrars (none of whom were named as defendants) "from implementing, enforcing, or giving any effect to the wet signature rule";

- Enjoin the Secretary "from rejecting voter registration applications for lack of a wet-ink signature"; and

- "[R]equir[e] [the Secretary] to permit voters whose voter registration applications were previously rejected for lack of a wet signature to resubmit their applications."

ROA.97.

The Secretary moved to dismiss. ROA.99. She argued that (1) sovereign immunity barred Plaintiffs' claims, ROA.101–06; (2) Plaintiffs did not have Article III standing, ROA.106–11; (3) Plaintiffs did not have so-called statutory standing under *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4

(2014), ROA.111–12; (4) section 101 of the Civil Rights Act does not contain an implied cause of action, ROA.112–14; and (5) Texas Election Code section 13.002's signed-writing requirement is constitutional, ROA.115–20.

The district court denied the motion. ROA.204. As relevant to this appeal, the court held that *Ex parte Young*'s exception to sovereign immunity applied. In particular, the district court took the view that Plaintiffs' allegations of federal-law violations and requests for "declaratory and prospective injunctive relief" were "exactly the type of claim that falls under *Ex parte Young*." ROA. 207.

Additionally, the court found that Plaintiffs had alleged that the Secretary was "connect[ed] to the enforcement" of the challenged law because she is the "chief election officer" and "has the duty and authority to maintain uniformity in the application . . . of state election laws, which includes directing, instructing, and ordering local election officials, prescribing statewide procedures, and protecting Texans' voting rights." ROA.207.

The court based this conclusion in part on the Plaintiffs' allegations that the Secretary had "institut[ed] and enforc[ed] a wet signature rule" and had issued a press release, and in part on the fact that, in district court litigation concerning the State's driver's-license-renewal system, "the Secretary has never claimed to lack authority or control over the validity, acceptance, or rejection of voter registration signatures." ROA.208 (citing *Stringer v. Pablos*, 320 F. Supp. 3d 862 (W.D. Tex. 2018), *rev'd sub. nom. Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019)).

The Secretary timely appealed the district court's denial of sovereign immunity. ROA.902.[6]

## Summary of the Argument

The district court committed legal error at every step of its sovereign-immunity analysis. This Court should reverse the order below for at least two independent reasons.

**I.** First, Plaintiffs cannot overcome sovereign immunity by naming the Texas Secretary of State as a defendant. Plaintiffs challenge provisions of the Election Code that local officials enforce. This Court has cautioned lower courts that a state official named as a defendant must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *Tex. Democratic Party v. Abbott*, --- F.3d ----, 2020 WL 6127049, at *7 (5th Cir. Oct. 14, 2020) ("*TDP*") (published merits opinion). The Secretary does not have the particular duty to approve voter registration applications. That falls on county registrars. Tex. Elec. Code § 13.072. Plaintiffs do not plead any facts to show that the Secretary has ever

---

[6] Following the district court's ruling, Plaintiffs filed a second amended complaint. ROA.219. That complaint identifies 42 U.S.C. section 1983, rather than an implied cause of action, as the vehicle for the Civil Rights Act claim. ROA.231. In all other respects, the new complaint is materially identical to the first amended complaint, which was the subject of the motion to dismiss. Because the existence of an implied cause of action is not at issue in this appeal, and because section 1983 does not abrogate sovereign immunity, the sovereign-immunity analysis is identical as between the two complaints. *See Quern v. Jordan*, 440 U.S. 332, 341 (1979). There is therefore no need for an additional motion to dismiss. *See Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir. 2018).

enforced the challenged provisions, or that it's likely she ever will. The district court instead relied on a combination of the Secretary's "general duty to enforce the law" and speculation, both of which are "insufficient for *Ex parte Young*," *TDP*, 2020 WL 6127049, at *7, Plaintiffs' only hope to overcome sovereign immunity.

**II.** Plaintiffs similarly fail to request relief that the court has the power to award. The *Ex parte Young* exception to sovereign immunity does not allow for retrospective relief. *Quern*, 440 U.S. at 337. Nor does it permit a district court to direct a state official to engage in rulemaking. *See Ex parte Young*, 209 U.S. at 158. Nonetheless, Plaintiffs seek to void guidance issued by the Secretary—a "quintessentially retrospective" form of relief. *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 473 (5th Cir. 2020) (en banc). And they want an injunction requiring the Secretary to rescind, rewrite, and enforce that guidance. These are not actions a federal court may direct a state official to perform. *Mi Familia Vota v. Abbott*, --- F.3d ----, 2020 WL 6058290, at *6 (5th Cir. Oct. 14, 2020) (published merits opinion); *Richardson v. Tex. Sec'y of State*, No. 20-50774, 2020 WL 6127721, at *17 (5th Cir. Oct. 19, 2020) (published stay opinion).

## Standard of Review

This Court "review[s] the district court's jurisdictional determination of sovereign immunity de novo." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

**ARGUMENT**

## I.  The Secretary is not a Proper *Ex parte Young* Defendant Because She Lacks a Sufficient Connection to the Enforcement of the Voter-Registration Laws.

Sovereign immunity "bars private suits against nonconsenting states in federal court." *Id.*[7] Sovereign immunity also bars "suit[s] against a state official in her official capacity" because they are "essentially . . . suit[s] against the State." *Mi Familia Vota*, 2020 WL 6058290, at *6.

Here, the district court held that *Ex parte Young*'s exception to sovereign immunity applied. ROA.206. That exception, "which was established in its namesake case," "is a legal fiction that allows private parties to bring suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *City of Austin*, 943 F.3d at 997 (quotation marks omitted) (citing *Ex parte Young*, 209 U.S. 123). "For the exception to apply," however, "the state official, by virtue of his office, must have some connection with the enforcement of the [challenged] act." *Id.* (quotation marks omitted; brackets in original).

The district court's holding should be reversed because Plaintiffs have not alleged "a sufficient connection" to engage the exception. *TDP*, 2020 WL 6127049, at *6. "This circuit has not spoken with conviction about all relevant details of the

---

[7] "[T]he Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Green Valley*, 969 F.3d at 495 n.2 (Oldham, J., concurring). So has this Court. *See, e.g.*, *City of Austin*, 943 F.3d at 997. The district court did the same here. ROA.205. For the sake of consistency, this brief will use the term "sovereign immunity" throughout.

'connection' requirement." *Id.* at *5. But the contours of the requirement are clear enough to warrant reversal here. *Cf. City of Austin*, 943 F.3d at 1000 ("[I]n the same vein as panels before us, we find that we need not define the outer bounds of this circuit's *Ex parte Young* analysis today.").

Plaintiffs challenge Texas Election Code section 13.002 to the extent that it requires a hand-written (rather than electronic) signature for a voter-registration application to be valid. They also challenged the use of the so-called "wet signature rule" to reject voter applications. But the Secretary does not enforce section 13.002; county voter registrars do. And even if the Secretary had promulgated a rule about "wet signatures" (she has not), she has not enforced or threatened to enforce it.

## A. The Secretary does not have the requisite connection to enforcement of the challenged statute.

### 1. The Secretary is not tasked with enforcement of section 13.002.

The proper *Ex parte Young* defendant is the official that is statutorily tasked with enforcing the challenged rule. Plaintiffs challenge the rejection of voter registration applications. The Texas Election Code tasks registrars with the review and rejection of applications. The Secretary is not a registrar, and she is not a proper *Ex parte Young* defendant.

A defendant's "general duty to see that the laws of the state are implemented" is not a sufficient connection. *TDP*, 2020 WL 6127049, at *7. Rather, the "the plaintiff at least must show the defendant has the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty. That means the official must be statutorily tasked with enforcing the challenged law." *Id.* at *5 (citation

and quotation marks omitted). This "requires a provision-by-provision analysis, *i.e.*, the official must have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Id.* at *6. "This is especially true" when it comes to the Texas Election Code because the Code "delineates between the authority of the Secretary of State and local officials." *Id.*

The provision-by-provision analysis is ordinarily a simple one—the court looks to state law to determine which official is required to enforce the challenged law. "Where a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, [the] *Young* analysis ends." *City of Austin*, 943 F.3d at 998. Applying this rubric, the Secretary is not sufficiently connected to the laws challenged here.

The Code tasks *county registrars*, not the Secretary, with processing applications, determining voter eligibility, enforcing section 13.002, and permitting voters to correct errors on their forms. *See* Tex. Elec. Code § 13.002(a) ("A person desiring to register to vote must submit an application to the registrar."); *id.* § 13.071(a) ("The registrar shall review each submitted application for registration to determine whether it complies with section 13.002 and indicates that the applicant is eligible for registration."); *id.* § 13.072(c) ("[I]f the registrar determines that an application does not comply with section 13.002 or does not indicate that the applicant is eligible for registration, the registrar shall reject the application."); *id.* § 13.073(b) ("If the registrar rejects an application . . . the registrar shall return the application to the applicant for completion and resubmission."). It is the county registrar, not the Secretary, who issues registration certificates and renewals, corrects registration

13

records, and cancels voters' registrations. *Id.* §§ 13.144, 14.001, 15.022, 15.024, 16.031–16.033. And it is the county registrar, not the Secretary, who resolves challenges to registrations, rejections, and cancellations. *See id.* §§ 13.079, 16.066, 16.095.[8]

This presents a problem for Plaintiffs. The registrar "is statutorily tasked with enforcing the challenged law[s]," but the Secretary, "a different official[,] is the named defendant." *City of Austin*, 943 F.3d at 998. "The requisite connection is" therefore "absent." *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020). The district court should have dismissed the claims.

### 2. Neither the Secretary's title nor her general powers to oversee the election process create the requisite connection to enforcement.

To support its conclusion that "*Ex parte [Y]oung* applies," ROA.206, the district court pointed to allegations that the Secretary's title and general authority under the Election Code imply the specific authority to enforce voter-registration laws. But each of those allegations is incorrect or insufficient to show a connection to enforcement.

To start, the court suggested that there was a connection to enforcement because the Secretary is the "chief election officer," ROA.207, citing Texas Election Code section 31.001(a), which describes the Secretary as "the chief election officer of the state." But the "Secretary's title 'chief election officer' is not a delegation of authority to care for any breakdown in the election process." *In re Hotze*, No. 20-

---

[8] Any appeal from a registrar's actions goes to a state district court, not the Secretary. Tex. Elec. Code §§ 17.001–17.003.

0739, --- S.W.3d ----, 2020 WL 5919726, at *6 (Tex. Oct. 7, 2020) (Blacklock, J., concurring) (citing *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972) (Reavley, J.)) (quotation marks omitted). So the mere recitation of the Secretary's job description does not relieve a plaintiff of the obligation to show "a sufficient connection" between the Secretary and "the statute challenged." *TDP*, 2020 WL 6127049, at *6. Plaintiffs do not challenge the Secretary's job description.

The court also noted that "the Secretary of State has the duty and authority to maintain uniformity in the application, operation and interpretation of state election laws, which includes directing, instructing, and ordering local election officials, prescribing statewide procedures, and protecting Texans' voting rights." ROA.207 (citing, among other sources, Tex. Elec. Code §§ 31.003, 31.005, 31.016). As explained above, however, this Court has "already held that [t]he required connection is not merely the general duty to see that the laws of the state are implemented, but the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *TDP*, 2020 WL 6127049, at *7 (quotation marks omitted; brackets in original). The district court's reliance on sections 31.003, 31.005, and 31.016 does not alter the analysis.

Starting with section 31.016, that section directs the Secretary to "prescribe procedures requiring" local officials to provide her with contact details for "the county election office" and the address and opening hours of each polling place "for inclusion on the secretary of state's Internet website." Tex. Elec. Code § 31.016(a). The Secretary's responsibility to maintain an informational website does not show a duty or willingness to enforce voter-registration laws.

15

Sections 31.003 and 31.005 do not support the district court's conclusion, either. The former directs the Secretary to "obtain and maintain uniformity in the application . . . of the election laws" by preparing and distributing "detailed and comprehensive written directives and instructions." *Id.* § 31.003. The latter permits—but does not require—the Secretary to "take appropriate action," including the issuance and enforcement of an order, "to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes." *Id.* § 31.005(a). These "general duties" do not demonstrate the necessary "particular duty" or willingness to enforce the "particular statutory provision that is the subject of the litigation." *TDP*, 2020 WL 6127049, at *6–*7.

This Court already considered and rejected a similar argument in *Mi Familia Vota*. There, the plaintiffs challenged a portion of the Texas Election Code that mandates the use of electronic voting devices. 2020 WL 6058290, at *5. They sued the Secretary, requesting an injunction ordering that paper ballots be made available at polling places. *Id.* at *2. In an attempt to overcome the Secretary's sovereign-immunity defense, plaintiffs claimed that she was "indisputably connected to enforcement" of the challenged law because of her powers under sections 31.003 and 31.005. Br. for Plaintiffs-Appellants at 51–52, *Mi Familia Vota v. Abbott*, 2020 WL 5759845 (5th Cir. Sept. 18, 2020) (No. 20-50793). This Court disagreed. Scrutinizing the Secretary's connection to the electronic-voting-device provision, the Court agreed that the Code *did* grant her some supervisory power. *Mi Familia Vota*, 2020 WL 6058290, at *5. But that was not enough. At bottom, plaintiffs challenged the lack of paper ballots. And the "Secretary [was] not responsible for printing or distributing

ballots." *Id.* The Code assigned that responsibility to county administrators. *Id.* at *5 n.24. The Secretary therefore lacked the requisite connection, and sovereign immunity applied. *Id.* at *5 (quoting *In re Abbott*, 956 F.3d at 709).

The same result is required here. As in *Mi Familia Vota*, Plaintiffs point to the Secretary's general duties under sections 31.003 and 31.005 as establishing a duty to enforce. *See* ROA.135, 138–39 (Plaintiffs' brief in opposition to the motion to dismiss). But whatever the scope of those general duties, Plaintiffs' claims target the approval or rejection of voter-registration applications. That is not the Secretary's particular responsibility. The Code assigns that responsibility to county registrars. Tex. Elec. Code §§ 13.071, 13.072. *They* are the proper defendants. The Secretary, by contrast, lacks a sufficient connection to section 13.072 and is an improper defendant under *Ex parte Young*. Sections 31.003 and 31.005 are of no moment. *See Bullock*, 480 S.W.2d at 372 (explaining that the Secretary's broadly-worded statutory duties are not "a delegation of authority to care for any breakdown in the election process"); *TDP*, 2020 WL 6127049, at *6 (similar).[9]

## B. The Secretary has neither instituted nor enforced a "wet signature rule."

The district court concluded that "the instant complaint . . . reflects a claim that the Texas Secretary of State has instituted and enforced a rule that arbitrarily invalidates voter registration signatures that are not wet ink signatures." ROA.206. That

---

[9] For the same reason, the Secretary's general powers would not allow her to coerce a local registrar in this situation. *See also In re Hotze*, 2020 WL 5919726, at *6 (Blacklock, J., concurring).

is wrong for three reasons. First, there is no such "rule." Second, even if there were, the Secretary has not enforced it. Finally, there is no plausible allegation of a threat that she will do so.

### 1. The Secretary has not instituted a "wet signature rule."

"[E]nforcement," for *Ex parte Young* purposes, "typically involv[es] compulsion or constraint." *City of Austin*, 943 F.3d at 1000. It is no surprise, then, that Plaintiffs wish to frame the Secretary's 2018 interpretation in compulsory terms—as a rule. That does not make it so. Plaintiffs complaint challenges the Secretary's 2018 interpretation of voter-registration laws, but that interpretation was not a rule. To determine what it *actually* was, the Court must look to the factual allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Those allegations all point in one direction: there was no wet signature "rule" or other kind of order. The Secretary issued a press release "remind[ing] all eligible Texas voters that online voter registration is not available in the State of Texas." Press Release, *supra*.[10] That is not a rule. The Secretary's spokesman also issued a statement. Barragán, *supra*. That is also not a rule. And the Secretary "advis[ed] counties that received the [third-party] applications to notify residents that they [were] incomplete." *Id.* Advice, of course, is not mandatory. *See In re Stalder*, 540 S.W.3d 215, 218 n.9 (Tex. App.—Hous. [1st Dist.] 2018, no pet.) (expressing doubt that a "party chair lacked the authority to . . . . form and act upon her own ultimate legal judgment" despite "having received the

---

[10] On a motion to dismiss, "courts must consider . . . documents incorporated into the complaint by reference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Secretary of State's assistance and advice in response to an inquiry"); *Ballas v. Symm*, 351 F. Supp. 876, 888 (S.D. Tex. 1972), *aff'd*, 494 F.2d 1167 (5th Cir. 1974) ("Plaintiff admits that the Secretary's opinions are unenforceable at law and are not binding.").

The facts alleged bear out the advisory nature of the 2018 interpretation. When the Secretary offered that advice, not all the registrars followed it initially. ROA.89 ¶ 19. So despite the conclusory language to the contrary, the complaint shows quite clearly that there was no rule. The Secretary's interpretation therefore cannot supply the necessary compulsion or constraint to make her a proper *Ex parte Young* defendant.

Granted, Plaintiffs have included the word "rule" many times in their allegations. ROA.81–82, ROA.84–87, ROA.89–97. But the Court need not give any weight to this conclusory legal categorization. *See Iqbal*, 556 U.S. at 678 ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." (quotation marks omitted)); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[L]abels and conclusions . . . will not do.").[11] When the Secretary promulgates rules, they are published in the Texas Administrative Code. But the

---

[11] Plaintiffs are inconsistent in how they characterize the Secretary's 2018 position on written signatures. At first, they describe it as a "claim," ROA.80, then a "rule," "guidance," ROA.81, a "requirement," ROA.82, an "announcement," and, finally, an "interpretation," ROA.89. This only underscores the conclusory nature of these labels.

Texas Administrative Code does not address "wet signatures," and Plaintiffs do not challenge any rules contained in the Administrative Code. As a matter of Texas law, there is no "wet signature rule."

### 2. The Secretary has not enforced the supposed "wet signature rule."

Even if the 2018 interpretation constituted a rule, Plaintiffs do not plausibly allege that the Secretary has enforced it. By definition, "specific enforcement actions" by the defendant "with respect to the challenged law" will supply the requisite connection to enforcement under *Ex parte Young*. *City of Austin*, 943 F.3d at 1001–02. In passing, Plaintiffs assert that "the Secretary and county officials continue to enforce the wet signature rule." ROA.92 ¶ 25. But again, the facts alleged do not support this legal conclusion. *See Twombly*, 550 U.S. at 555; *cf. Iqbal*, 556 U.S. at 680 ("[T]he plaintiffs' assertion of an unlawful agreement was a legal conclusion and, as such, was not entitled to the assumption of truth." (quotation marks omitted)). Plaintiffs assert that the Secretary's "opinions are enforceable," ROA.83 ¶ 8, yet they do not allege a single incident of enforcement on her part. To the contrary, Plaintiffs allege that enforcement has been left up to the registrars: "Absent any guidelines for distinguishing between wet and imaged signatures, enforcement of the wet signature rule will be left entirely to [registrars'] unfettered discretion." ROA.90 ¶ 20.

Yet Plaintiffs insist that the Secretary demonstrated her enforcement authority by creating the supposed wet-signature rule. In district court, Plaintiffs asserted that "the Secretary does not have just *some* connection to enforcing the wet signature rule, she is the single agent responsible for creating the rule itself." ROA.139; *see* ROA.208 (district court: "Plaintiffs allege that the Secretary of State[] exercise[d]

[her] authority by imposing this rule."). To borrow Plaintiffs' turn of phrase, that is a "red herring." ROA.137. "The power to promulgate law is not the power to enforce it." *In re Abbott*, 956 F.3d at 709; *see id.* (explaining that "issu[ing]" executive orders is not the same as "enforc[ing]" them); *Mi Familia Vota*, 2020 WL 6058290, at *4 (similar). That the Secretary supposedly "instituted" the "wet signature rule" would be irrelevant even if it were true.

Far from supporting the conclusion that enforcement by the Secretary is ongoing, the allegations show that she never *began* enforcement. The pleadings also confirm the Secretary's lack of a connection to enforcement: the registrars—not the Secretary—choose how and whether to enforce the written-signature requirement.

### 3. Plaintiffs fail to allege any threat of enforcement by the Secretary.

Relatedly, the district court ruled that "the continued threat" that the Secretary would "exercise [her] authority[] gives rise to the claims herein." ROA.208. There is no basis for this conclusion. Beyond vague and conclusory references to enforcement in the complaint, Plaintiffs have not offered facts alleging any past or ongoing enforcement of the supposed wet signature rule by the Secretary. Perhaps the court credited Plaintiffs' assertions that the Secretary has the power to enforce the rule. But even if those assertions were accurate (they are not), "[t]he mere fact that" an official "*has* the authority to enforce" falls short of establishing "the requisite 'connection to . . . enforcement.'" *City of Austin*, 943 F.3d at 1001–02. Similarly, speculation that the Secretary "*might* . . . bring a proceeding to enforce" the rule also falls short of establishing the necessary connection, even at the motion-to-dismiss stage. *Id.* at 1000; *see In re Abbott*, 956 F.3d at 709 (similar). Whatever "continued threat"

the district court had in mind, it is not in the record.[12] And it is legally insufficient for *Ex parte Young* purposes.

The district court relied on the "alleg[ation] that the Secretary of State's exercise of authority by imposing this rule is . . . reflected in statements and press releases." ROA.208. It is not. It was firmly established before the district court ruled that this circuit's "cases do not support the proposition that an official's public statement alone establishes authority to enforce a law, or the likelihood of [her] doing so, for *Young* purposes." *In re Abbott*, 956 F.3d at 709. In *Abbott*, for example, the Texas Attorney General issued a press release warning that "[t]hose who violate the governor's order will be met with the full force of the law." *Id.* (brackets in original). That statement did not permit an inference that the Attorney General was authorized or likely to enforce the law: "The Attorney General threatened that [the order] *would be enforced*, not that *he* would enforce it." *Id.*

That reasoning applies with even greater force here. The Secretary's press release expressed nothing more than a "commit[ment] to ensuring all Texans understand proper and legal procedures for registering to vote, and that all Texans who are eligible have the opportunity to submit valid registrations." Press Release, *supra*. That statement contains no suggestion of the rule's enforcement—by the Secretary

---

[12] Cryptically, Plaintiffs allege that "Texas's practices remain the same." ROA.91 ¶ 23. Assuming this means that nothing has changed since 2018, that tells the reader nothing about what those practices are and who is performing them. And because the Secretary did not engage in enforcement in 2018, a fair inference from this allegation is that the Secretary *still* has not brought an enforcement action.

or anyone else. Plaintiffs also seized on a statement from the Secretary's spokesman that "[a]ffixing digital signatures to applications is illegal in Texas." Barragán, *supra*.; ROA.89 ("[A] spokesperson for the Secretary went as far as to declare the use of the smartphone app to submit voter registration applications 'illegal.'"). Just as in *Abbott*, however, there is no indication that enforcement of that view was forthcoming—or that the Secretary would be the one doing that enforcement. The statements and press releases cannot support a finding that the Secretary is connected to enforcement of the rule. *See TDP*, 2020 WL 6127049, at \*7 (holding that a letter did not establish the required connection to enforcement because it "did not make a specific threat or indicate that enforcement was forthcoming").

The district court also relied on Plaintiffs' allegation "that the Secretary of State's exercise of authority . . . is also the unequivocal position the Secretary has taken in *Stringer v. Pablos*." ROA.208. In particular, the district court considered it relevant that, "in the *Stringer* litigation, the Secretary has never claimed to lack authority or control over the validity, acceptance, or rejection of voter registration signatures. In fact, the Secretary has not allowed certain electronic signatures to ever reach local registrars." ROA.208.

*Stringer* has no bearing on this case. The plaintiffs in *Stringer* sued the Director of the Texas Department of Public Safety ("DPS"), a state agency that issues driver's licenses and is tasked with providing driver's license applicants the "opportunity to complete a voter registration application form." Tex. Elec. Code § 20.063(a); *see* Plaintiffs' Original Complaint at 5, *Stringer v. Cascos*, No. 5:16-cv-00257-OLG (W.D. Tex. Mar. 14, 2016), ECF No. 1 ("*Stringer* Complaint")

(ROA.18-50428.26). The *Stringer* plaintiffs believed that DPS violated the National Voter Registration Act ("NVRA") because the agency had not implemented a system whereby online driver's-license applicants could simultaneously apply for voter registration. *Stringer* Complaint at 2–3 (ROA.18-50428.23–24). The Secretary was also named as a defendant because a "state's chief election official is responsible for coordinating that state's compliance with the NVRA." *Id.* at 5 (citing 52 U.S.C. § 20509) (ROA.18-50428.26).

These two cases are not alike, and the distinctions matter. Past "enforcement actions" are some evidence of a likelihood of future enforcement. *City of Austin*, 943 F.3d at 1001. But because the connection-to-enforcement inquiry focuses on "the particular duty to enforce the statute in question," *TDP*, 2020 WL 6127049, at *7, those past enforcement actions must be "specific" to the challenged law, *City of Austin*, 943 F.3d at 1001. Otherwise, they lack any evidentiary value. *Id.* at 1001–02.

In *Stringer*, the Director of DPS was forced to defend how he had exercised his duties under Chapter 20 of the Election Code and the sufficiency of his execution of DPS's "NVRA implementation plan." *Stringer* Complaint at 2–3 (ROA.18-50428.26); Appendix to Plaintiffs' Motion for Summary Judgment at 30-31, *Stringer v. Pablos*, No. 5:16-cv-00257-OLG (W.D. Tex. June 30, 2017), ECF No. 77-1 (DPS's implementation plan) (ROA.18-50428.2249). The Secretary had to defend against allegations that she had fallen short in her responsibilities under the NVRA. *See Whitley*, 942 F.3d at 719–20 (noting that Plaintiffs challenged "the DPS System" as violative of the NVRA). Here, the question is whether the Secretary has the power to enforce the written-signature requirement or somehow exercise the registrars'

power to act on applications under Texas Election Code section 13.072. The Secretary's involvement in *Stringer* says nothing about how to answer that question. For purposes of the enforcement analysis, the two cases are unrelated. *See City of Austin*, 943 F.3d at 1002 ("[T]hat [the Secretary] has chosen to intervene to defend *different* statutes under *different* circumstances does not show that [s]he is likely to do the same here.").

The district court's comment that the "Secretary has not allowed certain electronic signatures to ever reach local registrars" similarly misses the mark. ROA.208. If the integrated online driver's-license-*cum*-voter-registration system had worked the way the *Stringer* plaintiffs wanted it to, DPS would have forwarded a voter's details to the Secretary with the applicant's electronic signature, and the Secretary would have passed that information onto the local registrar. *Stringer*, 320 F. Supp. 3d at 872. But because DPS's online system was never integrated with the Secretary's, each agency ran "entirely separate application procedures"—a user that had completed an online DPS driver's-license application still had to complete, print out, and submit a separate voter application to the local registrar. *Id.* at 876–77. So the Secretary did not stop or prevent "certain electronic signatures" from reaching registrars. ROA.208. DPS never sent them to her in the first place. And the Secretary's belief that this was the outcome required by section 13.002(b), *see Stringer*, 320 F. Supp. 3d at 875, does not mean that she enforced that section. There is no allegation or evidence in *Stringer* that the Secretary stopped registrars from receiving the paper applications voters sent directly to the registrar. In fact, the district court in that case faulted the Secretary for her *inaction*, not for the exercise of any enforcement power.

*See Stringer v. Pablos*, No. 5:20-cv-00046-OLG, 2020 WL 532937, at \*5 (W.D. Tex. Jan. 30, 2020) ("Not only have Defendants expressly refused to correct the violations, but they have failed to offer any assistance."). Once again, this unnecessary foray into *Stringer* says nothing about the relevant issue here: the Secretary's power and proclivity to control registrars' review of paper applications.

Finally, it's difficult to see how the Secretary's status as a defendant in *Stringer* is evidence of her power to enforce anything. The Secretary did not try to "compel or constrain" any party using her powers under the Election Code: She did not bring the lawsuit. She did not move to intervene in proceedings. *Cf. City of Austin*, 943 F.3d at 1000 (entertaining the argument that a "habit of suing or intervening in litigation" could establish the enforcement connection). She asked the court to dismiss on sovereign immunity grounds and for lack of standing. *See Stringer*, 320 F. Supp. at 883–87. Sovereign immunity would not mean much if a plaintiff could evade it simply by pointing out that a state official had once involuntarily been named as a defendant in an earlier lawsuit.

\* \* \*

This circuit has offered varying tests for determining whether an official is an appropriate *Ex parte Young* defendant. Plaintiffs have not satisfied any of them. The suit against the Secretary is barred by sovereign immunity, and this Court should reverse the district court.[13]

---

[13] In the district court, Plaintiffs sought to bypass the entirety of this legal analysis by relying on *OCA-Greater Houston v. Texas*, a facial challenge to a provision of the Election Code where the panel held that harm caused by a local election official

## II. Sovereign Immunity and Federalism Principles Bar all the Relief Plaintiffs Seek.

An additional, independent sovereign-immunity problem requires reversal. To overcome sovereign immunity, it is not enough to name the correct defendant. Plaintiffs' requested relief must also fall within the narrow class of remedies permitted by *Ex parte Young*. First, the relief sought must be prospective; retrospective relief remains barred by sovereign immunity. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). Second, the *Ex parte Young* exception applies only in the "precise situation" where "a federal court commands a state official to do nothing more than refrain from violating a federal law." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247,

---

could be traced back to and redressed by the Secretary because the Secretary "serves as the 'chief election officer of the state.'" 867 F.3d 604, 613 (5th Cir. 2017). The district court was correct not to rely on that case in its otherwise-erroneous sovereign-immunity ruling. The *OCA* holding applies solely to standing. *Id.* at 612–13. It does not control the *Ex parte Young* analysis in this as-applied litigation. *See Tex. Democratic Party v. Hughs*, 974 F.3d 570, 571 (5th Cir. 2020) (per curiam). As this Court has recognized, the *OCA* standing holding cannot be squared with an earlier—and authoritative—interpretation of the Secretary's duties by the Supreme Court of Texas. *See TDP*, 2020 WL 6127049, at *6 (applying *Ex parte Young*, rejecting plaintiffs' attempt to rely on the Secretary's chief-election-officer status, and noting then-Justice Reavley's explanation that the Secretary's general statutory duties do not grant her unlimited enforcement power (citing *Bullock*, 480 S.W.2d at 372)). Perhaps because of *OCA*'s infirmities, recent panels have rebuffed requests to import *OCA*'s standing analysis into their sovereign-immunity opinions. *Compare* Pls' Br., *Mi Familia Vota*, 2020 WL 5759845, at *52 (arguing that *OCA* demonstrates a connection to enforcement), *with Mi Familia Vota*, 2020 WL 6058290, at *5 & n.26 (finding no connection to enforcement, granting sovereign immunity on most claims, and citing *OCA* only for its abrogation holding); *and compare Tex. Democratic Party v. Abbott*, No. 20-50407 (5th Cir. Sept. 10, 2020) (relying on *OCA* to permit a suit against the Secretary), *with TDP*, 2020 WL 6127049 (withdrawing the September opinion and omitting any reference to *OCA* in the revised opinion).

255 (2011). Plaintiffs cannot clear these hurdles. Plaintiffs seek a declaration that the Secretary's advice in 2018 was unlawful. That is retrospective relief. As for injunctive relief, they demand that the Secretary engage in rulemaking and enforcement—a far cry from a request that she merely refrain from violating federal law. None of Plaintiffs' requested relief is permissible under *Ex parte Young*.

## A. The declaratory relief sought here is retrospective and therefore unavailable under the *Ex parte Young* exception.

Certain prospective relief directed at a state official falls within the *Ex parte Young* exception. Retrospective relief does not. *Quern*, 440 U.S. at 337. Plaintiffs ask the district court to "declar[e] that the wet signature rule" violates the 1964 Civil Rights Act and the Constitution. ROA.97. Because the remedy is "targeted at undoing" a past order, the declaration is "inherently retrospective" and barred by sovereign immunity. *Green Valley*, 969 F.3d at 473.

"Often, the line between the permissible and the forbidden"—that is, between prospective and retrospective relief—"is fuzzy." *Id.* at 471. To clear up that fuzziness, a court looks past the label the plaintiff attaches to the relief and focuses on the "substance rather than . . . the form of the relief sought." *Freedom from Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020).

On that point, *Green Valley* is instructive. There, plaintiff asked the district court "to restrain state officials from enforcing an unlawful order," and sought a declaration invalidating the earlier order as unlawful. 969 F.3d at 473. The Fifth Circuit, sitting en banc, held that the request to restrain the officials' future conduct was prospective, but the declaratory relief was not: "That relief—the voiding of a final state

agency order—is quintessentially retrospective and thus out of bounds under *Young*." *Id.* (quotation marks omitted).

So too here. The complaint alleges that the Secretary issued an interpretation of the Election Code only once—in 2018. ROA.88–89. And Plaintiffs' position is that the interpretation had the force of a binding order. ROA.140 ("Plaintiffs allege that the Secretary imposed the wet signature rule."). If the complaint is correct, a declaration that the Secretary's 2018 "rule" violates the Civil Rights Act and the Constitution would result in "the voiding of a final state agency order," a "quintessentially retrospective" form of relief, *Green Valley*, 969 F.3d at 473; *see also Freedom from Religion*, 955 F.3d at 425–26 (holding that a declaration of a past violation was retrospective even though the "declaratory judgment could have some future effect").

The declaratory relief Plaintiffs seek is therefore retrospective, barred by sovereign immunity, and unavailable under *Ex parte Young*. Their claims must be dismissed.

## B. Any injunctive relief issued in this case would require the Secretary to perform a discretionary function of her office, which *Ex parte Young* prohibits.

Plaintiffs' requested injunctive relief also goes beyond what a federal court could order under the *Ex Parte Young* exception. That exception "rests on the . . . fiction that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." *Stewart*, 563 U.S. at 255 (citation and quotation marks omitted). By contrast, when "the relief requested cannot be granted by merely ordering the cessation of the

conduct complained of but will require affirmative action by the sovereign," the fiction cannot be sustained and the "suit . . . fail[s] as one against the sovereign," barred by sovereign immunity. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949). In other words, *Ex parte Young* can be used to *stop* an official from acting, but it does not permit a court to order an official to *exercise* sovereign power by taking an official act. *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971).

For Plaintiffs, this limit to *Ex parte Young* is insurmountable. All of their requested injunctive relief would require the Secretary to affirmatively act by exercising the sovereign power granted to her as a state official. A court, therefore, may award none of it.

### 1.   Prohibitory relief against the Secretary would serve no purpose.

Plaintiffs ask the district court to "enjoin[] the Secretary . . . [and] county voter registrars[] from implementing, enforcing or giving any effect to the wet signature rule" and to "enjoin[] [the Secretary] from rejecting registration applications for lack of a wet-ink signature." ROA.97. At first glance, it appears that these are requests that the Secretary *refrain* from taking certain acts. But if they are, they would achieve nothing.

Because the county registrars are responsible for approving or rejecting voter applications, *they* are the ones who would "implement[]" or "giv[e] . . . effect to the wet signature rule" and "reject[] registration applications," not the Secretary. *See* Tex. Elec. Code §§ 13.071–13.072 (assigning to county registrars the task of determining compliance with section 13.002 and the power to approve, reject, or

challenge an applicant). It would be meaningless to direct the Secretary to refrain from acts she cannot and does not perform.

And although the court theoretically "could order the Secretary not to enforce" the wet-signature rule (if there were such a rule), "that still would not require *counties*" to abandon the rule. *Mi Familia Vota*, 2020 WL 6058290, at *5 (emphasis altered). "That responsibility falls on local officials. It would remain their choice as to whether to" follow the rule. *Id.* But because Plaintiffs have not named any local officials as defendants, they "cannot be enjoined in this suit." *Id.* A prohibitory injunction against the Secretary, therefore, "would not afford the Plaintiffs the relief that they seek" and would be pointless. *Id.*

### 2. *Ex parte Young* does not permit an injunction that requires the Secretary to take affirmative action in her official capacity.

Prohibitory relief against the Secretary won't make Plaintiffs' alleged injuries go away. That's why elsewhere in their complaint, Plaintiffs explain that what they're really seeking is affirmative relief—for the district court to "instruct the Secretary to inform all county registrars that voter registration applications should not be rejected for lack of a wet signature." ROA.82 ¶ 4. And in their brief in opposition to the motion to dismiss, Plaintiffs said that the fact that the Secretary "does not approve or reject applications" was irrelevant because the Secretary could remedy Plaintiffs' injuries by "order[ing] local officials to correct [their] offending conduct." ROA.137–38 (quotation marks removed); *see also* ROA.142 (acknowledging that "Plaintiffs' requested injunction" is an "injunction[] directing affirmative action" (quotation marks omitted)). Thus, despite the language in the prayer for relief,

the "substance . . . of the relief sought" is affirmative, not prohibitory. *Freedom from Religion*, 955 F.3d at 425; *see Richardson*, 2020 WL 6127721, at *16 (describing a court order directing the Secretary to "promulgate an advisory" directed at "local officials" as "requir[ing] . . . the Secretary [to] take . . . positive actions").

Plaintiffs also asked the district court to "requir[e] Defendant to permit voters whose voter registration applications were previously rejected for lack of a wet signature to resubmit their applications." ROA.97. Again, the local registrar, not the Secretary, is tasked with processing applications and corresponding with voters. *See* Tex. Elec. Code § 13.071–13.072; *id.* § 13.073 (requiring the registrar to inform an applicant of a rejection and "return the application to the applicant for completion and resubmission"); Barragán, *supra* (indicating that, in 2018, "[c]ounties . . . sen[t] notices" to rejected applicants, and quoting the Travis County voter registrar as saying that the county was "crafting a letter" for rejected applicants to "sign . . . and send . . . back"). So the Secretary could only comply with the requested injunction by taking affirmative steps to "rescind" her 2018 interpretation, issue a new "rule," and somehow compel compliance by registrars. This is precisely the kind of affirmative relief prohibited by sovereign immunity. *See Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam) (dismissing on sovereign-immunity grounds an action "seeking to obtain an order requiring [an agency director] to withdraw" his formal "advice to the federal agencies" because "the order requested would require the [d]irector's official affirmative action").

In the end, it does not matter whether the court takes the prayer for relief at its word or accepts Plaintiffs' recharacterization of their requested relief. Either way,

the result should be the same. If Plaintiffs are asking the court to order the Secretary herself to approve applications, the injunctions will achieve nothing because the Secretary is not a registrar—the injunctions "would not afford Plaintiffs the relief that they seek" and the claims must be dismissed because "the Secretary of State is not a proper defendant." *Mi Familia Vota*, 2020 WL 6058290, at *5 (quotation marks omitted). If, on the other hand, Plaintiffs want the Secretary to engage in some form of advising, rulemaking, or enforcement, the claims must also be dismissed because they seek affirmative action unavailable under the *Ex parte Young* exception.

### 3. Assuming that *Ex parte Young* permits some affirmative injunctive relief, it does not allow federal courts to control the exercise of a state official's discretion.

Even under a narrower view of the affirmative-action bar, Plaintiffs cannot get the injunctive relief they seek. The en banc Court has recently questioned whether "sovereign immunity bars *all* affirmative injunctions" or just those that would "control the Secretary in her exercise of *discretionary* functions." *Richardson*, 2020 WL 6127721, at *16 (citing *Green Valley*, 969 F.3d at 472 n.21). Whatever the court's doubts, the rule in *Larson*'s footnote 11 remains the law of this circuit. *See Danos v. Jones*, 652 F.3d 577, 583 (5th Cir. 2011) (applying the *Larson*-footnote-11 prohibition against ordering an official to take "affirmative action"); *Green Valley*, 969 F.3d at 472 n.21 ("leav[ing] for another day" a re-examination of *Larson*'s footnote 11); *Stewart*, 563 U.S. at 255 (confirming that the *Ex parte Young* doctrine "is limited to" court orders "command[ing] a state official to do nothing more than *refrain* from violating federal law" (emphasis added)). Because earlier panels have applied the

footnote, the rule of orderliness requires future panels to do the same "until the decision is overruled . . . by either the United States Supreme Court or by the Fifth Circuit sitting en banc." *Gahagan v. USCIS*, 911 F.3d 298, 302 (5th Cir. 2018), *cert. denied*, 140 S. Ct. 449 (2019).

Still, the impropriety of Plaintiffs' requested relief does not hinge on the court's application of the rule of orderliness. Even if a federal court may order *some* affirmative action, it is well settled that a court may not order a state official to perform a *discretionary* action. *See, e.g.*, *Ex parte Young*, 209 U.S. at 158 ("There is no doubt that the court cannot control the exercise of the discretion of an officer."); *Richardson*, 2020 WL 6127721, at *16 (similar); *Vann v. Kempthorne*, 534 F.3d 741, 754 (D.C. Cir. 2008) (holding that a court may not "oblige" an officer "to use his discretionary authority to comply with [an] injunction").

Assuming, as Plaintiffs allege, that Texas law empowers the Secretary to compel registrars to accept electronic signatures, every statute that could conceivably confer that power involves the exercise of discretionary authority. *See Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 428–29 (5th Cir. 1997) ("Review of the provisions of the Texas Election Code that refer to the Secretary's role in elections reveals that most give discretion to the Secretary to take some action.").

Start with Texas Election Code sections 31.003 and 31.004, which Plaintiffs claim the Secretary relied on to "impose[] the wet signature rule." ROA.140. Section 31.003 directs the Secretary to "obtain and maintain uniformity in the application, operation, and interpretation of . . . election laws." Tex. Elec. Code § 31.003. Section 31.004 directs the Secretary to "assist and advise all election authorities."

*Id.* § 31.004. Both of these provisions speak in broad terms about the Secretary's role, affording her considerable discretion as to the method of enforcement. Because these sections grant the Secretary "an element of judgment or choice" in her methods, any act she takes pursuant to them is "discretionary in nature" for sovereign-immunity purposes. *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 323 (5th Cir. 2009); *see also id.* ("If a statute, regulation, or policy leaves it to . . . [an] agency to determine when and how to take action, the agency is not bound to act in a particular manner and the exercise of its authority is discretionary."); *Davis v. Scherer*, 468 U.S. 183, 196 n.14 (1984) ("A law that fails to specify the precise action that the official must take in each instance creates only discretionary authority."); *Richardson*, 2020 WL 6127721, at *17 ("[Section] 31.003 leaves [the Secretary] considerable discretion and latitude in how to [execute the statute.] By prescribing detailed and specific procedures that the Secretary must include in her advisory, the district court impinges upon her discretionary authority in flat violation of *Young*.").

Or consider section 31.005. According to Plaintiffs and the district court, that provision would empower the Secretary to undo her 2018 guidance. ROA.138; ROA.207. Section 31.005 says that the Secretary "*may* take appropriate action to protect the voting rights" of Texans "[*i*]*f* the Secretary determines that" an official "is imped[ing] the free exercise of a citizen's voting rights." Tex. Elec. Code § 31.005 (emphasis added). As this Court has held, section 31.005's permissive language makes it discretionary. *Lightbourn*, 118 F.3d at 429 (listing § 31.005 as a provision that "give[s] discretion to the Secretary"); *see Richardson*, 2020 WL 6127721,

at *17 ("Section 31.005 grants the Secretary discretion to take enforcement actions, and the district court cannot, therefore, compel such actions under *Young*.").

What's more, regardless of whether *Ex parte Young* applies, a federal court may not "order an executive performing executive functions, or an executive performing essentially legislative functions, to promulgate directives mandated by the court." *Mi Familia Vota*, 2020 WL 6058290, at *6; *see id.* (holding that sovereign immunity had been validly abrogated but that there was still no "authority for courts to order state officials to promulgate legislation, regulations or executive orders"); *id.* at *7 ("[C]ourt-ordered-relief would require the . . . Secretary of State to issue an executive order or directive or to take other sweeping affirmative action," which "would violate principles of federalism.") *cf. Printz v. United States*, 521 U.S. 898, 922 (1997) (explaining that "federal control of state officers" is unconstitutional).

Again, Plaintiffs allege that the Secretary has the power to "impose . . . rule[s]" on registrars. ROA.90 ¶ 21; *see also* ROA.207 (district court: "[T]he Secretary has the duty [to] . . . direct[], instruct[], and order[] local election officials, [and to] prescrib[e] statewide procedures."). And they want her to use it. But the rule applied in *Mi Familia Vota* prohibits the district court from directing the Secretary to exercise that power. And because this prohibition applies even when the sovereign-immunity defense does not, *see Mi Familia Vota*, 2020 WL 6058290, at *6, it supplies an alternative basis for this court to reverse without reaching the *Ex parte Young* issues presented in the appeal, *cf. Richardson*, 2020 WL 6127721, at *4 (declining to address "the Secretary's arguments concerning standing or whether sovereign immunity

bars the present suit against her" because "the district court's remedy" was likely improper).

\* \* \*

In short, whatever the precise scope of the bar against affirmative injunctive relief, Plaintiffs cannot overcome it. The district court cannot grant any of the injunctive relief Plaintiffs seek. And because the declaratory relief requested only targets past conduct, Part II.A, *supra*, it must be dismissed along with the injunctive relief. *See Freedom from Religion*, 955 F.3d at 425–26 (explaining that sovereign immunity "barred a claim for declaratory relief once the claim for injunctive relief was rendered moot").

## Conclusion

The Court should reverse the district court's denial of sovereign immunity and remand to the district court with instructions to dismiss Plaintiffs' claims.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Ryan L. Bangert
Deputy First Assistant
    Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Kyle D. Hawkins
Solicitor General

/s/ Matthew H. Frederick
Matthew H. Frederick
Deputy Solicitor General
Matthew.Frederick@oag.texas.gov

Patrick K. Sweeten
Associate Deputy Attorney General

Todd Lawrence Disher
Deputy Chief, Special Litigation Unit

William T. Thompson
Special Counsel

Counsel for Defendant-Appellant

## CERTIFICATE OF SERVICE

On October 26, 2020, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,010 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Matthew H. Frederick
MATTHEW H. FREDERICK